# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MINDY JO HALL,            )
                          )
      Plaintiff,      )
                          )
v.                        )   Case No. CIV-16-82-JHP-SPS
                          )
NANCY A. BERRYHILL,       )
Acting Commissioner of the Social )
Security Administration,[1] )
                          )
      Defendant.      )

## OPINION AND ORDER

The claimant Mindy Jo Hall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 26, 1974, and was forty years old at the time of the administrative hearing (Tr. 28, 170). She completed the eighth grade while attending special education classes, and has worked as a laundry laborer and stocker (Tr. 21, 197). She alleges that she has been unable to work since April 27, 2012, due to diabetes, obesity, and nerve damage (Tr. 196).

## Procedural History

On April 22, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Luke Liter determined the claimant was not disabled in a written opinion dated October 10, 2014 (Tr. 10-23). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he determined that the claimant had the severe impairments of low intellectual functioning, obesity, and diabetes mellitus (Tr. 13). At step four, he found that the claimant retained the residual functional capacity (RFC) to perform a range of light work,

*i. e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk six hours in an eight-hour workday, but that she could only occasionally climb ramps or stairs, kneel, stoop, and crouch, and that she could not climb ladders, ropes, or scaffolds, nor could she crawl. Additionally, the ALJ limited her to simple tasks, defined as unskilled work with a specific vocational preparation (SVP) of 1-2 (Tr. 16). The ALJ then found that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, sewing machine operator, small products assembler, and bagger (Tr. 22).

## Review

The claimant's sole contention of error is that the ALJ failed to properly apply Listing 12.05C. The undersigned Magistrate Judge agrees, and the decision of the Commissioner should therefore be reversed.

The claimant reported in her application that she completed the eighth grade and attended special education classes (Tr. 197). Additionally, her mother, uncle, and stepfather prepared letters stating that she attended special education classes during her entire educational experience (Tr. 248-250). In appealing the ALJ's written opinion, the claimant's representative indicated that, because the claimant's school records were over twenty years old, they had been destroyed (Tr. 252).

At the administrative hearing, much of the questioning of the claimant related to her level of intellectual disability. The claimant testified that she almost always had a family member with her at her places of employment, to help her with her job duties

4

(Tr. 41, 46). Furthermore, she testified that she worked at Wal-Mart with a cousin, but was fired the day after her cousin was fired because she could not do her work without her cousin (Tr. 46-47). At the same hearing, the vocational expert classified this specific job as having an SVP of 4, or as semi-skilled (Tr. 51).

On October 3, 2013, Clinical Psychologist B. Todd Graybill, Ph.D., conducted, *inter alia*, IQ testing of the claimant (Tr. 469-470). On the WAIS-III, the claimant obtained a "Verbal IQ of 64, and Performance IQ of 67, and a Full Scale IQ of 63, placing her in the extremely low range of intellectual functioning" (Tr. 469). Furthermore, he indicated that he believed this was a valid representation of her current intellectual abilities, noting that she could understand, retain, and follow simple instructions, but that her attention span and concentration abilities were significantly impaired, and that her social skills were "talkative, naïve, and emotional" (Tr. 469-470). Likewise, he did not believe her capable of managing her own benefits (Tr. 470).

The claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Nevertheless, the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why claimant was not disabled at step three. *Id*. at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

At step three of the sequential evaluation, the ALJ determined that the claimant's severe impairment of low intellectual functioning did not meet section 12.05 of the Listing of Impairments because he found there was no evidence to support a finding that the claimant had deficits of adaptive functioning prior to age 22, and that her history of semi-skilled work further belies such a finding. The undersigned Magistrate Judge disagrees.

In order to satisfy section 12.05C to establish intellectual disability at the time of the ALJ's opinion, the claimant must first satisfy the diagnostic description included in the introductory paragraph which requires that the claimant possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05 (Effective February 26, 2014 to December 8, 2014). This initial requirement is referred to as the "capsule definition." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006) [unpublished opinion]. In addition to satisfying the capsule definition of intellectual disability, the claimant must also satisfy two additional prongs in order to meet the requirements of Listing 12.05C: "a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1 (Effective February 26, 2014 to December 8, 2014) [emphasis added].

As to the capsule definition applicable to the entirety of Listing 12.05, the ALJ did make a finding that the claimant failed to meet the capsule definition because: (1) he had

6

no evidence of adaptive functioning impairment prior to the claimant being 22, and (2) he found she had performed semi-skilled work in the past. In spite of the claimant's Disability Report indicating that she was in the special education program at her high school (Tr. 176), as well as her reports of the same to everyone who inquired (Tr. 252), as well as the statements prepared by her mother, uncle, and stepfather (Tr. 248-250), the Commissioner nevertheless continues to argue that the claimant's self-reports are insufficient evidence to support a finding of onset prior to age 22. However, "a claimant 'is not required to affirmatively prove that [s]he [had an intellectual disability] prior to reaching the age of twenty two so long as there was no evidence that the claimant's IQ had changed.'" *Johnson v. Colvin*, 2016 WL 7176655, at *5-6 (W.D. Okla. Dec. 8, 2016), *quoting McKown v. Shalala*, 5 F.3d 546, 1993 WL 335788 at *3 (10th Cir. Aug. 26, 1993) (unpublished table opinion). "As one of our sister courts has found, an IQ score within the range in the regulation 'is itself some evidence of mental retardation before age twenty-two." *Young v. Colvin*, 2013 WL 5417211, at *4 (E.D. Okla. Sept. 26, 2013), *quoting Fox v. Barnhart*, 2007 WL 1063198, at *5-6 (D. Kan. April 2, 2007) (collecting cases).

The ALJ's conclusory reliance on Plaintiff's education and work history does not change this result. The SSA has not adopted a standard to measure what constitutes 'deficits of adaptive functioning' under the capsule definition of Listing 12.05(C). Instead, the SSA allows use of the measurement methods authorized by four major professional organizations dealing with mental retardation. . . . The ALJ's decision, however, is silent with respect to what method he used to measure Plaintiff's deficits of

7

adaptive functioning." *Johnson v. Colvin*, 2016 WL 7176655, at *6, *citing Barnes v. Barnhart*, 116 Fed. Appx. 934, 942 (10th Cir. 2004). The undersigned Magistrate Judge thus finds that the ALJ ignored evidence to support the likelihood the claimant had deficits in adaptive functioning prior to age 22. *See Johnson v. Colvin*, 2016 WL 7176655, at *7 ("Significantly, the ALJ failed to explain why Plaintiff's completion of the tenth grade, in light of the additional evidence that she was recommended for special education classes and could not complete her GED, supports a finding that she did not have the requisite deficits in adaptive functioning to support the Listing 12.05(C) criteria.").

Turning to the two prongs of section 12.05C, "'the purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects h[er] work.'" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997). With respect to the requirements specifically comprising Listing 12.05C, the claimant clearly satisfies the first prong of the listing since *all* of her IQ score fell below 70, *e. g.*, the claimant scored a Verbal IQ of 65, a Performance IQ of 67, and a Full Scale IQ of 63 on the WAIS-III (Tr. 469-470). *See id.* § 12.00D(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, *e. g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.").

The second requirement of Listing 12.05C is that the claimant must have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C. The Tenth

8

Circuit has adopted the view of the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function." *Hinkle*, 132 F.3d at 1352. ("We conclude the analysis employed by the First and Eleventh Circuits is the better interpretation of what must be shown to satisfy the second prong of § 12.05C."), *citing Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984) and *Nieves v. Secretary of Health & Human Services*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two." *Hinkle*, 132 F.3d at 1352-53, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience[.]") [internal citations omitted]. Here, the ALJ determined that claimant had the additional severe impairments of obesity and diabetes mellitus (Tr. 13). This was sufficient to satisfy the second prong. *See Peck*, 214 Fed. Appx. at 734 ("Based on the ALJ's findings [that the claimant had severe impairments that combined to significantly limit her ability to perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4. Thus, contrary to the ALJ's failure to analyze the claimant's impairments under Listing 12.05C, the claimant *did* provide some evidence that her impairment existed before the age of 22, and *both* that she had an IQ

9

score in the range of 60-70 *and* a "mental impairment imposing an additional and significant work-related limitation." The ALJ's findings at step three with regard to Listing 12.05C are therefore not supported by substantial evidence, and the decision of the Commissioner should be REVERSED and REMANDED to the ALJ for further analysis as outlined above.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**